## DREW *v.* RUST.

A quitclaim deed, without consideration from a mortgagor to the mortgagee, will be without effect, as against an attaching creditor of the mortgagor.

If a mortgagee, after such quitclaim deed, purchase the claim of a creditor, and cause the right in equity to be levied upon and sold, he cannot set up his quitclaim against the purchaser.

If a party who has a right to require an assignment, pay the mortgage debt, and take a discharge, the mortgage will be held a subsisting security for his protection.

If necessary to prevent the loss of the money so paid, he may maintain a writ of entry as on a mortgage, and recover a conditional judgment for that amount.

WRIT OF ENTRY, to recover possession of certain land described in the count, of which the plaintiffs allege they were seized in fee and in mortgage, &c.  Plea, the general issue.

The parties agree on the following facts : George Rust held a mortgage of the premises from David Boyle, dated May 28, 1849, for $250 ; and the two defendants, George and Henry B. Rust, held a mortgage of the same premises from Boyle, dated November 2, 1850, for $1,189.  Both mortgages were recorded December 2, 1850.  The last was in part given to indemnify the defendants against a note of $1,000, signed by them as Boyle's sureties, to J. Parker and others.

On the 30th of July, 1852, Boyle executed to the defendants a quitclaim deed of the same premises, for the purposes of foreclosing these mortgages, but no money or writing of any kind then passed from the defendants to Boyle.  The deed was recorded on the same day.

On the 6th of August, 1852, Parker and another attached Boyle's right to the premises ; and in September, 1853, the defendants purchased and took an assignment from them of the judgment recovered by them in that suit, and on the 14th of October, 1853, they took, on an execution issued on that judgment, all Boyle's right to redeem the premises under all the mortgages given by him to the defendants.  This right was sold on the 15th of November, 1853, to the plaintiffs.  The officer's

deed to them was dated the same day, and recorded November 22, 1853, and the officer's return was recorded January 6, 1856.

The plaintiffs knew of the defendant's mortgage for $1,189 at the time they purchased the equity, but supposed it to be fraudulent.

On the 8th of September, 1855, the plaintiffs paid to George Rust, and he accepted, $308 in full of his mortgage, and Rust then wrote, signed and acknowledged the following indorsement on the mortgage, which was soon after recorded: "Sept. 8, 1855. I hereby acknowledge that I have received satisfaction in full of this mortgage."

On that day George Rust was in possession of the premises, and on the 10th the two defendants took possession.

Judgment is to be rendered for the plaintiff, or defendant, as the court shall order.

*Charles F. Hill*, for the plaintiffs.

I. At the time of the transfer to the plaintiffs by George Rust of his mortgage from Boyle, the fee in the premises described in said mortgage, and now in dispute, was in him. *Brown* v. *Cram*, 1 N. H. 169; *McMurphy* v. *Minot*, 4 N. H. 255; *Glass* v. *Ellison*, 9 N. H. 69; *Wilson* v. *Kimball*, 27 N. H. (7 Foster) 300; *Southerin* v. *Mendum*, 5 N. H. 429.

II. The mortgage for $1,189 and the quitclaim, being subsequent to George Rust's mortgage, could not affect Rust's title under his mortgage, and therefore cannot affect the plaintiffs' title under the same mortgage. *Wilson* v. *Kimball*, 27 N. H. (7 Foster) 300; *Ladd* v. *Wiggin*, 35 N. H. 421.

III. George Rust, being one of the grantees in the mortgage of $1,189, and in the quitclaim, his title under his prior mortgage cannot be affected by the prior record of the $1,189 mortgage. *State of Connecticut* v. *Bradish*, 14 Mass. 296; *Porter* v. *Grant*, 4 Greenl. 20; *Lawry* v. *Williams*, 13 Maine 281; *French* v. *French*, 3 N. H. 263; *Colby* v. *Kenniston*, 4 N. H. 262; *Montgomery* v. *Dorion*, 6 N. H. 254.

IV. George Rust's interest under his mortgage did not merge in the title given by the quitclaim.

1. It was not for his advantage for such merger to occur. *Jackson* v. *Blodgett*, 5 Cowen 202 ; *Pratt* v. *Law*, 9 Cra. 498.

2. It was his intention to hold his interests distinct. *James* v. *Morey*, 2 Cowen 246, 285 ; *Starr* v. *Ellis*, 6 Johns. 395 ; *Pratt* v. *Bank*, 10 Vt. 243.

3. When the estates of mortgager and mortgagee coëxist in the same person, the court will consider the interests distinct, if equity requires it. *Hutchins* v. *Carlton*, 19 N. H. 487 ; *Johnson* v. *Elliot*, 26 N. H. (6 Foster) 67.

4. There was a secret trust for the grantor under the quitclaim deed. It is void. *Ladd* v. *Wiggin*, 35 N. H. 421 ; *Towle* v. *Hoit*, 14 N. H. 61.

5. The additional party to the quitclaim must prevent a merger.

V. All the title and interests which George Rust acquired under his mortgage, passed to the plaintiff by the delivery of the note and mortgage. Such delivery operates as an assignment, and the plaintiff took all Rust's title, and stands in his place. They are mortgagees. *Ladd* v. *Wiggin*, above ; *Green* v. *Johnson*, 1 Johns. 580 ; *Jackson* v. *Blodgett*, 5 Cowen 202 ; *Wilson* v. *Kimball*, 27 N. H. (7 Foster) 300 ; *Rigney* v. *Lovejoy*, 13 N. H. 247 ; *Gleason* v. *Dyke*, 22 Pick. 390 ; *Robinson* v. *Leavitt*, 7 N. H. 99 ; *Bailey* v. *Willard*, 8 N. H. 429 ; *Towle* v. *Hoit*, 14 N. H. 61 ; *Southerin* v. *Mendum*, 5 N. H. 429.

VI. The acts of these defendants afford strong evidence of fraudulent intent. They may not profit by their own wrong. Chitty on Contracts 679 ; *Ladd* v. *Wiggin*, above.

VII. These defendants had equal interests in the mortgage for $1,189, in the quitclaim, and in the judgment assigned to them by Parker and another. They jointly levied upon, and sold on execution issued on that judgment, Boyle's equity of redeeming both mortgages subsequently to the execution of the quitclaim deed ; and George Rust, with the consent of his

co-defendant, received from the plaintiffs the amount due on his private mortgage, and delivered to them his note and mortgage. These defendants are therefore estopped from denying the assignment of his mortgage by George Rust, and from disputing the plaintiffs' title acquired under that mortgage. Henry B. Rust did not object to the transfer by George Rust of his note and mortgage to the plaintiff; therefore the law presumes his consent to the proceeding. 1 Greenl. Ev., secs. 27, 197.

A party will be estopped from denying his own acts or admissions which were expressly designed to influence the conduct of another, and did so influence it, when such denial will operate to the injury of the latter. *Davis* v. *Saunders*, 11 N. H. 259; *Kinsman's Lessee* v. *Loomis*, 11 Ohio 475; *Pelletreau* v. *Jackson*, 11 Wendell 117; *Black* v. *Tucker*, 13 Wendell 178; 4 Kent's Com. 261, note; 1 Ch. Pl. 604; 1 Greenl. Ev., sec. 22; *Bell* v. *Twilight*, 26 N. H. (6 Foster) 401; *Kimball* v. *Blaisdell*, 5 N. H. 533; *Flanders* v. *Jones*, 30 N. H. (10 Foster) 154.

Where a party has so conducted himself as wittingly and willingly to lead another into a belief of a fact, by which he would be injured if it proved otherwise, he will be estopped from denying it to the injury of such other person. *Rangely* v. *Spring*, 20 Maine (8 Shep.) 130; *Hicks* v. *Cram*, 17 Vt. 449.

If a man who has a right to a particular property is present at the sale of that property by another, and he does not forbid the sale, or give notice of his claim, he will not be permitted to set up his title or claim against the purchaser, provided he was aware of what was doing; had knowledge of his rights, or such information as ought to have put him on inquiry, and the purchaser had no reason to suspect his claim. 1 Story Eq., sec. 384; 1 Mad. Ch. Pr. 264; *Wendell* v. *Van Rensellaer*, 1 Johns. Ch. 354; *Marshall* v. *Pierce*, 12 N. H. 127; *Watkins* v. *Peck*, 13 N. H. 360; *Wells* v. *Pierce*, 27 N. H. (7 Foster) 503.

So if the owner of property stands by and sees his property levied upon as the property of another, without giving notice of his title, he is estopped from after asserting his claim against

such levy. *Irwin* v. *Morrill*, Dudley 72 ; *Roe* v. *Neal*, Ibid. 168; *Morse* v. *Child*, 6 N. H. 521 ; *Marston* v. *Brackett*, 9 N. H. 336 ; *Thompson* v. *Sanborn*, 11 N. H. 201; *Marshall* v. *Pierce*, 12 N. H. 127.

VIII. These defendants are disseizors of the plaintiffs. A mortgage in fee passes to the mortgagee the mortgager's estate in the land, and he may maintain trespass or entry against any person. *Southerin* v. *Mendum*, 5 N. H. 429. Every person who is in possession of mortgaged premises may be treated as a disseizor, unless he holds under a title paramount to the mortgage. *Wheeler* v. *Bates*, 21 N. H. (1 Foster) 460 ; *Wilson* v. *Webber*, 6 N. H. 419 ; *Towle* v. *Ayer*, 8 N. H. 57.

The quitclaim deed from Boyle to the defendants did not extinguish the prior mortgages from Boyle to the defendants, for there was no release or discharge given by the defendants to Boyle, either expressly or impliedly. *Ladd* v. *Wiggin*, before cited.

*Z. Batchelder*, for the defendants.

1. It was the understanding of the parties, when the money was paid by the plaintiff to George Rust, that it was paid in satisfaction of the mortgage.

2. The plaintiffs, at the time they paid the money, being fully aware of the existence of the second mortgage, and probably thinking that they could invalidate it, paid the money at their own risk, and ought not now to be permitted to turn into a purchase what was intended to be a satisfaction of the first mortgage.

3. If they were the owners of the equity of redemption at the time, as they claim to have been, on the payment to satisfy the mortgage the mortgage would cease to exist. *Eaton* v. *George*, 2 N. H. 300 ; 3 N. H. 294 ; 2 Cowen 246 ; 3 Johns. Ch. 53 ; 6 Johns. Ch. 417, 393.

4. In that case they would hold the land subject to the second mortgage, and on that account could not maintain this action.

5. On one other account they could not in that case maintain

this action, for they sue as assignees of the mortgage to George Rust, which has no existence, if it was paid and satisfied.

6. The plaintiffs, not having procured the execution, with the officer's return thereon, to be recorded, and the same not having been recorded at the time they paid the money, no privity existed between them and George Rust, but they were mere strangers, and no waiver of the right to redeem would be implied in their favor.

7. If they obtained an assignment of the mortgage by the payment of the money, and afterwards perfected their title to the equity, the mortgage and equity would unite, and they be owners in fee simple ; and their estate would be subject to the second mortgage, and then this action could not lie as the plaintiffs have brought it.

8. But the defendants say that no mortgage or right to redeem existed in this case at the time the plaintiffs purchased the supposed equity ; that by taking the quitclaim deed from Boyle the defendants became the purchasers of the right to redeem ; that the mortgages ceased to exist from that time, and the defendants thenceforth held the land in fee simple and unincumbered. 2 N. H. 294.

9. It is not stated expressly that no consideration was paid for the equity, only that no money was paid at the time the deed was given. The law would imply a consideration. Stopping the accumulation of interest on the notes secured would be a sufficient consideration, especially if the property was mortgaged for more than it was worth.

10. The plaintiffs were not purchasers of the equity, for it does not appear that the officer who sold the supposed equity ever returned the execution to the court from which it issued, according to the precept thereof. Rev. Stat., chap. 196, sec. 1 ; Comp. Stat. 502, sec. 1 ; 7 N. H. 581.

11. At the time of the payment of the money they were not, for another reason, the owners of the equity, if any was sold ; because the execution and the return had not been recorded in

the registry of deeds. Rev. Stat., chap. 196, sec. 8 ; Comp. Stat. 503 ; 7 N. H. 581.

12. If the equity and the mortgages became united by the operation of the quitclaim deed, and the defendants held the property in fee simple, it could be conveyed in no other way than other land so held. George Rust could not waive a foreclosure, for he had not foreclosed, but purchased the equity; nor could he waive a purchase by a deed on record, by parol or mere implication of law; and if it be said that the defendants by a sale of the equity waived the rights acquired under the quitclaim deed, it may be said in reply, that they did not attempt to sell what did not exist, but only what they supposed to have a distinct existence ; and further, that none but a purchaser could set up such a claim, and the plaintiffs are not such, the officer having neglected to return the execution according to the requirement of the law.

13. If George Rust could by any possibility have waived the rights acquired by the quitclaim deed, by accepting the money from the plaintiffs, Henry B. Rust, not being a party to that transaction, would retain all the rights he had previously acquired, and the plaintiffs, as assignees of George Rust, would stand in the same relation to him as George Rust sustained, and could not disturb his possession.

BELL, J. Upon the facts stated in this case, the defendants held, on the 30th of July, 1852, a mortgage to George Rust for $250 principal, and a mortgage to both for $1,189, and a quitclaim from the mortgagor of his right to redeem, made on that date.

These conveyances gave to the defendants a complete title to the whole property. No fraud, nor any defect of either of these conveyances is suggested, and the plaintiff had no interest which gave him any right to object, if there were.

J. Parker and another, on the 6th of August, 1852, attached Boyle's equity to redeem the property, and recovered judgment,

and on their execution this right was sold to the plaintiffs, and conveyed to him by the officer.

Upon the case thus far the plaintiffs acquired no interest by this sale and deed, because Boyle, the mortgagor, had no interest liable to attachment. He had, previous to the suit, released all his interest.

There is no distinct statement that Parker and another had any such debt as entitled them to raise any question as to the good faith of Boyle's release to the defendants. If they had such debt, as no consideration for the quitclaim deed appears, this deed would be inoperative as to them.

But the case is complicated by the acts of the defendants themselves. They were sureties of Boyle to Parker and another, for $1,000, and their mortgage from Boyle for $1,189 was given to secure that liability in part; and in September, 1853, they purchased of Parker and another their judgment, and themselves seized and caused to be sold the equity of redemption, " under all the mortgages given by him to them upon these premises," upon an execution issued upon that judgment.

Situated as they then were, they had no interest to set up their quitclaim deed against this execution, and the fact of their agency in the seizure and sale of this equity of redemption might be properly considered, in connection with the other facts stated, as a distinct admission on their part that the quitclaim of Boyle was invalid as against Parker and another's debt, upon which all the world would have the right to act in bidding at the sale.

If an owner or claimant of property actively persuades or encourages another person, who is ignorant of his right, to purchase the property, or any right or interest in it, he will not be permitted to claim the property against the purchaser. *Wells* v. *Pierce*, 27 N. H. (7 Foster) 511, and cases there cited. And in that case it was held, that if a party take any active part in the sale of property, without making known his claim, it is a fraud which will estop him to claim his legal rights. Such is the position of these defendants as to the release by Boyle of

his right of redemption. They owned Parker and another's judgment, they took out the execution, and controlled it. The right of Boyle to redeem was seized, advertised, and sold under their direction, as it well might be if Boyle's quitclaim was inoperative as to that claim, and they were silent as to their right or claim under that release. It would be a fraud in them, under such circumstances, now to deny that Boyle had the right to redeem what was then sold. They are estopped to deny it.

But this fraud, as it is and might be, and consequent estoppel, extended only to this equity of redemption. The right sold was to redeem all the mortgages made to the defendants on this property, and as to these mortgages there was no concealment and no fraud. The plaintiffs knew at the time of their purchase of the defendants' mortgage of $1,189, and purchased in terms the right of redeeming it. They suspected it to be fraudulent, but if this was so the fact was immaterial. The purchaser at a sheriff's sale of an equity of redemption is estopped to deny or impeach the mortgage described or referred to in the officer's return and deed, as the mortgage of which the right to redeem is sold, upon the ground that it was made in fraud of creditors. *Flanders* v. *Jones*, 30 N. H. (10 Foster) 154, and *Russell* v. *Dudley*, 3 Met. 147, there cited.

The mortgage to George Rust may be regarded as standing in the same position as to these defendants as if it was made to a stranger, and had been paid to him. Though the payment was indorsed upon the mortgage, in full satisfaction of it, yet it is settled that if it is necessary, to prevent injustice, the payment will be held to be a purchase in favor of a party who had a right to require an assignment when he made the payment, and the mortgage, as between the parties, will be held a subsisting security. *Robinson* v. *Leavitt*, 7 N. H. 99 ; *Rigney* v. *Lovejoy*, 13 N. H. 252 ; *Heath* v. *West*, 26 N. H. (6 Foster) 191.

That is the condition of the present case, so far as we can judge from the statement. The plaintiff will lose the money he paid George Rust, unless he can recover it in this action. He claims nothing but in the capacity of mortgagee, and he is

entitled as such to a conditional judgment, and to a writ of possession, unless the defendants, within sixty days, pay the amount due on the mortgage to George Rust.

As it was the duty of the defendants to cause the execution to be duly returned, they do not seem to be in a position to object because that does not appear to have been done.